U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED
JAN 2 5 2018
CLERK, U.S. DISTRICT COURT
By_____
      Deputy

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| UNIVERSITY BAPTIST CHURCH, | § | |
| Plaintiff, | § | |
| VS. | § | NO. 4:17-CV-962-A |
| LEXINGTON INSURANCE COMPANY, ET AL., | § | |
| Defendants. | § | |

## MEMORANDUM OPINION
and
### ORDER

Before the court for consideration and decision is the motion of plaintiff, University Baptist Church, to remand the above-captioned action. The motion also seeks the imposition of sanctions against defendant Lexington Insurance Company ("Lexington") for improper removal. Having considered the motion, the responses of defendants, Kevin Forman ("Forman"), York Risk Services Inc ("York"), and Lexington, plaintiff's reply, and the applicable legal authorities, the court finds that the motion should be denied, and that the claims of plaintiff against Forman should be dismissed.

I.

### Background

Plaintiff initiated this action on August 31, 2017, by the filing of an original petition in the District Court of Tarrant County, Texas, 352nd Judicial District. Plaintiff filed an

amended petition on November 1, 2017. The state court pleading alleges that plaintiff filed a claim with Lexington for roof and structural damage incurred by plaintiff's commercial property on or about March 17, 2016, as a result of a series of hailstorms. Lexington forwarded the claim to York, which assigned Forman as the adjuster on the claim. Forman discovered from plaintiff's own roofing contractor that upgrades to plaintiff's roof were necessary to comply with the building code requirements for the City of Forth Worth. Plaintiff's roofing contractor ended up charging in excess of $800,000.00 for code upgrades, despite an original code upgrade bid of $285,000.00. Plaintiff's policy had a sublimit of $250,000.00 for code and ordinance endorsement. Presumably, though plaintiff's complaint does not clearly state so, Lexington refused to pay for such improvements, or otherwise rejected Plaintiff's claim.[1] Plaintiff also complains that "Forman agreed to only pay for a lesser quality of tile and not a tile of 'like kind and quanlity' as required under the policy." Doc. 5 at 25, ¶ 11. Based on these facts, plaintiff asserted

---

[1] Plaintiff's amended petition contains vague and somewhat inconsistetn statements throughout it such as, "[t]his failure to pay for the damages sustained during the policy period is a breach of the terms of the policy," doc. 5 at 25, ¶ 11, "[d]efendants failed and refused to pay Plaintiff an appropriate amount," id. at 26, ¶ 12, and that defendants failed to "[pay] or partially [pay] a valid claim," id. at 27, ¶ 17. These statements do not notify the court of the true nature and scope of plaintiff's proposed damages, particularly whether plaintiff is complaining of a complete denial of its claim, a partial denial of its claim, or that defendants did not pay an appropriate amount for code upgrades to plaintiff's roof. The "Doc.___" reference is to the number of the item on the docket in this action.

claims against Lexington for breach of contract, and against all defendants for breach of the duty of good faith and fair dealing, violations of the Texas Deceptive Trade Practices Act ("DTPA"), and unfair settlement practices under the Texas Insurance Code.

On December 4, 2017, Lexington removed the action to this court asserting subject matter jurisdiction based on diversity of citizenship and that plaintiff improperly joined Forman to avoid federal diversity jurisdiction. On December 14, 2017, plaintiff filed the instant motion to remand, arguing that Forman was properly joined as a defendant in this action, that Forman and plaintiff are citizens of the same state such that Forman's presence in the action deprives this court of subject matter jurisdiction, and that remand is therefore required. Plaintiff also seeks $3,000.00 in attorney's fees.

II.

Applicable Legal Principles

A. General Principles for Removal

Under 28 U.S.C. § 1441(a), a defendant may remove to federal court any state court action of which the federal district court would have original jurisdiction.[2] "The removing party bears the

---

[2] The removal statute provides, in pertinent part, "[A]ny civil action brought in a State court <u>of which the district courts of the United States have original jurisdiction</u>, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a) (emphasis added).

3

burden of showing that federal subject matter jurisdiction exists and that removal was proper." Manguno v. Prudential Prop. & Cas. Ins. Co., 276 F.3d 720, 723 (5th Cir. 2002) (citations omitted). "Moreover, because the effect of removal is to deprive the state court of an action properly before it, removal raises significant federalism concerns . . . which mandate strict construction of the removal statute." Carpenter v. Wichita Falls Indep. Sch. Dist., 44 F.3d 362, 365-66 (5th Cir. 1995). Any doubts about whether removal jurisdiction is proper must therefore be resolved against the exercise of federal jurisdiction. Acuna v. Brown & Root Inc., 200 F.3d 335, 339 (5th Cir. 2000).

B.  Fraudulent or Improper Joinder

To determine whether a party was fraudulently or improperly joined to prevent removal, "the court must analyze whether (1) there is actual fraud in pleading jurisdictional facts or (2) the plaintiff is unable to establish a cause of action against the nondiverse defendant." Campbell v. Stone Ins., Inc., 509 F.3d 665, 669 (5th Cir. 2007). Because defendants have not alleged actual fraud in the pleadings, the applicable test for improper joinder is:

> whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant.

Smallwood v. Ill. Cent. R.R., 385 F.3d 568, 573 (5th Cir. 2004). To answer this question, the court may either: (1) conduct a Rule 12(b)(6)-type analysis or (2) in rare cases, make a summary inquiry "to identify the presence of discrete and undisputed facts that would preclude plaintiff's recovery against the in-state defendant." Id. at 573-74. A Rule 12(b)(6)-type analysis of plaintiff's claims appears to be the proper method here to determine whether there exists a reasonable basis for a conclusion that plaintiff might be able to recover against Forman.

C. The Pleading Standard to be Used in the Rule 12(b)(6)-Type Analysis

Although there has been some uncertainty as to the pleading standard to be applied, the Fifth Circuit has most recently held that federal courts should use the federal court pleading standard when conducting the Rule 12(b)(6)-type analysis of an improper joinder claim in a motion to remand to determine if the plaintiff has stated a claim against a nondiverse defendant. Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd., 818 F.3d 193, 208 (5th Cir. 2016).[3] Rule 8(a)(2) of the Federal

---

[3]The court notes that Texas now has a failure-to-state-a-claim rule that is substantially the same as the federal rule and that Texas courts have interpreted their Rule 91a as requiring a federal Rule 12(b)(6)-type analysis and have relied on federal case law in applying Rule 91a. See, e.g., Wooley v. Schaffer, 447 S.W.3d 71, 76 (Tex. App.–Houston [14th Dist.] 2014, pet. denied); GoDaddy.com, LLC v. Toups, 429 S.W.3d 752, 754-55 (Tex. App.–Beaumont 2014, pet. denied). Thus, the outcome would be
(continued...)

5

Rules of Civil Procedure provides, in a general way, the applicable standard of pleading. It requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), "in order to give the defendant fair notice of what the claim is and the grounds upon which it rests," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotation marks and ellipsis omitted). Although a complaint need not contain detailed factual allegations, the "showing" contemplated by Rule 8 requires the plaintiff to do more than simply allege legal conclusions or recite the elements of a cause of action. Twombly, 550 U.S. at 555 & n.3. Thus, while a court must accept all of the factual allegations in the complaint as true, it need not credit bare legal conclusions that are unsupported by any factual underpinnings. See Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009) ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.").

Moreover, to survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), the facts pleaded must allow the court to infer that the plaintiff's right to relief is plausible. Iqbal, 556 U.S. at 678. To allege a plausible right

---

[3](...continued)
the same if the court were to apply the Texas pleading standard.

to relief, the facts pleaded must suggest liability; allegations that are merely consistent with unlawful conduct are insufficient. <u>Id.</u> In other words, where the facts pleaded do no more than permit the court to infer the possibility of misconduct, the complaint has not shown that the pleader is entitled to relief. <u>Id.</u> at 679. "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." <u>Id.</u>

Rule 9(b) of the Federal Rules of Civil Procedure sets forth the heightened pleading standard imposed for fraud claims: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." The Fifth Circuit requires a party asserting fraud to "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." <u>Hermann Holdings, Ltd. v. Lucent Techs., Inc.</u>, 302 F.3d 552, 564-65 (5th Cir. 2002) (internal quotations and citations omitted). Succinctly stated, Rule 9(b) requires a party to identify in its pleading "the who, what, when, where, and how" of the events constituting the purported fraud. <u>Dorsey v. Portfolio Equities, Inc.</u>, 540 F.3d 333, 339 (5th Cir. 2008). Claims alleging violations of the

Texas Insurance Code are subject to the requirements of Rule 9(b). <u>Frith v. Guardian Life Ins. Co. of Am.</u>, 9 F. Supp. 2d 734, 742 (S.D. Tex. 1998). As are claims alleging violations of the DTPA. <u>Id.</u> at 800; <u>Berry v. Indianapolis Life Ins. Co.</u>, 608 F.Supp.2d 785, 800 (N.D. Tex. 2009).

III.

Analysis

On the facts outlined in section I of this order, plaintiff asserts that Forman is liable to it for breaching the duty of good faith and fair dealing, violations of § 541 of the Texas Insurance Code, and violations of the DTPA. These causes of action are outlined in sections VI, VII, and VIII of plaintiff's amended petition, with language indicating that the causes of action are asserted against all three defendants. In fact, throughout these sections, plaintiff only refers to "defendants" collectively, making no attempt to distinguish how any defendant individually engaged in acts or omissions giving rise to liability.

This court has consistently held that "[m]erely lumping diverse and non-diverse defendants together in undifferentiated liability averments of a petition does not satisfy the requirement to state specific actionable conduct against the non-diverse defendant." <u>Plascencia v. State Farm Lloyds</u>, 2014 WL

8

11474841, at *5 (quoting Studer v. State Farm Lloyds, 2014 WL 234352, at *4 (citation omitted)). It is not the job of the court to speculate which averments apply to individual defendants. Therefore, without more specificity the court is unable to infer that plaintiff has a right to relief against Forman that is plausible, and clearly its claims against Forman cannot survive the Rule 12(b)(6)-type analysis.

Moreover, even ignoring that plaintiff's general lumping defendants together and assuming that each assertion by plaintiff is to apply to Forman specifically, the court still finds that plaintiff has failed to state a claim against Forman.

First, the law is clear in Texas that absent some special, contractual relationship, an independent adjuster has no duty of good faith and fair dealing to an insured. Natividad v. Alexsis, Inc., 875 S.W.2d 695, 697-8 (Tex. 1994); Gasch v. Hartford Acc. & Indem. Co., 491 F.3d 278, 282 (5th Cir. 2007). The duty of good faith and fair dealing arises as a result of the unequal bargaining that exists between the insured and insurer, and is therefore non-delegable. Natividad, 875 S.W.2d at 698. Thus, Forman's status as a third-party adjuster means that plaintiff's claim against him for breach of the duty of good faith and fair dealing is not a cognizable one.

The law is similarly clear that liability for a violation of § 541 may only extend to an adjuster who undertakes a proscribed settlement practice. Mere nonpayment by the insurer, cannot, by itself, serve as the basis for a claim against the adjuster. In other words, plaintiff must show that Forman, on his own, engaged in some act that is prohibited by the section. Though plaintiff provided specific factual allegations regarding Forman's involvement in adjusting his claim, it has not specifically alleged which of Forman's actions give rise to any particular violation of § 541, much less spelled out the who, what, when, where, and how of the purported violations.

Finally, plaintiff's claims against Forman for violations of the DTPA also fail. Plaintiff has alleged that "defendants" violated § 17.46(b) when they:

(a) [R]epresented that goods of services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have;

(b) [R]epresented that goods or services were of a particular standard, quality, or grade, or that goods were of a particular style or model, if they are of another;

(c) [R]epresented that an agreement confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law;

(d) [F]ailed to disclose information concerning goods or services which was known at the time of the transaction when such failure to disclose such

> information was intended to induce the customer
> into a transaction into which the consumer would
> not have entered had the information been
> disclosed.

Doc. 5 at 28, ¶ 21.

Though the DTPA applies to insurers and adjusters alike, these allegations are really legal conclusions couched as factual allegations with no support in the petition. For example, plaintiff has not alleged that Forman made any representations or misrepresentations to it of any kind. The only representations plaintiff alleges Forman made at all involve communications between Forman and plaintiff's contractor about how the contractor should bill plaintiff for work completed to bring plaintiff's roof within the City of Fort Worth's building code requirements. Plaintiff has not alleged how these statements, or any other action by Forman, might implicate the DTPA violations laid out above. Accordingly, the court concludes that plaintiff has failed to state a claim against Forman, that Forman was improperly joined to prevent this court from obtaining jurisdiction over the matter, that Forman's citizenship should be disregarded for purposes of determining whether this court has subject matter jurisdiction over the claims asserted by plaintiff against Lexington and York, that Forman should be dismissed from

the action, and that plaintiff's motion to remand should be denied.

IV

Order

The court ORDERS that plaintiff's motion to remand be, and is hereby, denied, and that plaintiff's claims and causes of action against Forman be, and are hereby, dismissed without prejudice.

The court determines that there is no just reason for delay in, and hereby directs, entry of final judgment as to the dismissal of such claims.

The court further ORDERS that from this point forward Lexington and York are the only defendants in this action and that the action shall be styled as "University Baptist Church v. Lexington Insurance Company and York Risk Services Inc."

SIGNED January 25, 2018.

JOHN MCBRYDE
United States District Judge