U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

MAY 16 2018

CLERK, U.S. DISTRICT COURT
By_____
    Deputy

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| UNIVERSITY BAPTIST CHURCH FORT WORTH, § § § Plaintiff, § § VS. § LEXINGTON INSURANCE COMPANY § AND YORK RISK SERVICES GROUP INC§, § Defendants. § | NO. 4:17-CV-962-A |

MEMORANDUM OPINION
and
ORDER

Came on for consideration in the above-captioned action the motion to dismiss filed by defendant York Risk Services Group, Inc. ("York"). The court, having considered the motion, the response of plaintiff, University Baptist Church of Fort Worth, thereto, York's reply, the entire record, including the supplemental authority submitted by plaintiff, and the applicable legal authorities, finds that the motion should be granted.

I.

Plaintiff's Amended Complaint

Plaintiff's live pleading is Plaintiff's Amended Complaint. In it, plaintiff alleges the following claims against York:

York was hired by defendant Lexington Insurance Company ("Lexington") to adjust the alleged loss sustained to plaintiff's property following a hail and wind storm on March 17, 2016.

Doc.[1] 19 at 2, ¶¶ 7-8. York, in turn, assigned one of its employees, Kevin Forman ("Forman"), to examine the property and adjust the loss. Id., ¶ 8. On September 14, 2016, Lexington sent documentation to plaintiff indicating that the undisputed loss and agreed scope of costs for replacement of the roof was $586,040.20. Id. at 3, ¶¶ 9 & 11. Also in September, after concerns arose about whether plaintiff's commercial property complied with the necessary code requirements, Forman retained a third party to inspect the roof and address the code upgrade issues. Id., ¶ 13. Forman notified plaintiff on September 26, 2016, that plaintiff would be receiving a copy of an engineering report from the engineer retained by the third party, and a related invoice from Jeff Eubank Roofing ("JE Roofing"), and requested that plaintiff forward that information to Forman upon receipt for the purpose of developing with plaintiff an agreed scope for the additional improvements required.[2] Id., ¶ 14. On November 23, 2016, JE Roofing submitted to Forman a code upgrade bid of $285,798.00 Id., ¶ 16. In December 2016 and January 2017 Forman discussed with JE Roofing the proposed cost of the code

---

[1]The "Doc.___" reference is to the number assigned to the referenced item on the docket in this action, No. 4:17-CV-962-A.

[2]The email read, in pertinent part: "When you receive a copy of the engineering report and related invoice . . . , please forward me a copy for review so we can develop an agreed scope for the additional decking required." Id., ¶ 14. (emphasis removed).

2

upgrade project. Id. at 4, ¶¶ 18-19. It was agreed that "the cost of re-decking the main chapel" would be conducted on a "time and material" basis, "due to the uniqueness of the project." Id., ¶ 19. Forman sent JE Roofing the forms to be used for tracking time and materials with instructions that in order to avoid any concerns or misunderstandings, the forms were to be returned within two days of the applicable activity. Id., ¶ 20. On February 28, 2017, Forman sent an email to plaintiff that read:

> I have informed the carrier that [the third-party] has verified that the changes being made to the decking of the main church for the installment of new tile is being required and enforced by the city of Fort Worth. Code upgrade costs are indemnified once incurred when they fall under this city of FT. Worth enforcement. Due to the uniqueness of the operation and since it hasn't been done before, this is why we are tracking the costs in this way as agreed with JE Roofing.

Id. at 4, ¶ 22 (emphasis removed).

Plaintiff alleged that before York's approval was given for the work to begin, JE Roofing had already begun replacing the roof. Id. at 5, ¶ 24. Plaintiff also alleged that the roofing contractor regularly submitted to York the invoices or forms as agreed. Id., ¶ 23.

On April 28, 2017, Plaintiff received an invoice that included seven weeks of "Extras" charges in the amount of $582,944.75. Id., ¶ 25. Plaintiff asked Forman several days

3

later to confirm in writing that the insurance would "provide the funds for the work required by the engineer." Id. On July 11, 2017, plaintiff, through the church's pastor, informed Lexington "that its prior inquiries about the status of the claim had gone unresponded to." Id., ¶ 28. The pastor, in the email he sent to Lexington "recalled a conversation [the pastor] had with Forman in which Forman stated that he was 'alarmed at the skyrocketing costs for the repairs and implied that the church could potentially be responsible.'" Id. The pastor also informed Lexington at this time that it had not received weekly updates regarding progress on the re-decking, that plaintiff "endured increased exposure to the roof and the church itself," and that plaintiff had instructed JE Roofing to cease work on the roof. Id., at 5-6, ¶ 28. JE Roofing charged $864,148.49 in "time and materials" related to the code upgrade for plaintiff's property. Id., at 5, ¶ 32.

"Defendants failed and refused to pay [p]laintiff an appropriate amount for losses and damages caused to [p]laintiff's property by an occurrence covered under their contract . . . ." Id., ¶ 37. Plaintiff was required to take out a loan to pay for "the extra work" performed by JE Roofing. Id., ¶ 33.

Based on these allegations, plaintiff has brought claims against York for violations of the Texas Insurance Code, namely

4

sections 541.060(a)(1), 541.060(a)(2)(A), 541.060(a)(3), and 541.060(a)(7), for violations of the Texas Deceptive Trade Practices-Consumer Protection Act ("DTPA"), Tex. Bus. & Com. Code §§ 17.41-.63, particularly sections 17.45, 17.46, and 17.50, and for promissory estoppel.

II.

Grounds of the Motion

York moves to dismiss plaintiff's claims against it on the grounds that (1) plaintiff failed to allege in its amended complaint the necessary "who, what, where, when, and how" of York's purported statutory violations, (2) plaintiff failed to allege that plaintiff suffered any extra-contractual damages as a result of York's actions, and (3) plaintiff's promissory estoppel claim fails as a matter of law.

III.

Applicable Pleading Standards

Rule 8(a)(2) of the Federal Rules of Civil Procedure provides, in a general way, the applicable standard of pleading. It requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), "in order to give the defendant fair notice of what the claim is and the grounds upon which it rests," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal

quotation marks and ellipsis omitted). Although a complaint need not contain detailed factual allegations, the "showing" contemplated by Rule 8 requires the plaintiff to do more than simply allege legal conclusions or recite the elements of a cause of action. Twombly, 550 U.S. at 555 & n.3. Thus, while a court must accept all of the factual allegations in the complaint as true, it need not credit bare legal conclusions that are unsupported by any factual underpinnings. See Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009) ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.").

Moreover, to survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, the facts pleaded must allow the court to infer that the plaintiff's right to relief is plausible. Iqbal, 556 U.S. at 678. To allege a plausible right to relief, the facts pleaded must suggest liability; allegations that are merely consistent with unlawful conduct are insufficient. Id. In other words, where the facts pleaded do no more than permit the court to infer the possibility of misconduct, the complaint has not shown that the pleader is entitled to relief. Id. at 679. "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the

reviewing court to draw on its judicial experience and common sense." Id.

Rule 9(b) of the Federal Rules of Civil Procedure sets forth the heightened pleading standard imposed for fraud claims: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." The Fifth Circuit requires a party asserting fraud to "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." Hermann Holdings, Ltd. v. Lucent Techs., Inc., 302 F.3d 552, 564-65 (5th Cir. 2002) (internal quotations and citations omitted). Succinctly stated, Rule 9(b) requires a party to identify in its pleading "the who, what, when, where, and how" of the events constituting the purported fraud. Dorsey v. Portfolio Equities, Inc., 540 F.3d 333, 339 (5th Cir. 2008). Claims alleging violations of the Texas Insurance Code are subject to the requirements of Rule 9(b). Frith v. Guardian Life Ins. Co. of Am., 9 F. Supp. 2d 734, 742 (S.D. Tex. 1998), as are claims alleging violations of the DTPA. Id. at 742-43; see also Berry v. Indianapolis Life Ins. Co., 608 F. Supp. 2d 785, 800 (N.D. Tex. Mar. 11, 2009).

IV.

Analysis

A. Texas Insurance Code Claims

Plaintiff's amended complaint alleged several violations by York of section 541.060 of the Texas Insurance Code. To the extent that plaintiff alleged that York violated section 541.060(a)(2)(A), (a)(3), and (a)(7), this court and others have routinely held that liability under these provisions cannot be imposed on adjusters, and instead applies to the insurer itself. McClelland v. Chubb Lloyd's Ins. Co., No. 5:16-CV-00108, 2016 WL 5791206, at *3 (W.D. Tex. Sept. 30, 2016); Lopez v. United Prop. & Cas. Ins. Co., 197 F. Supp. 3d 944, 950 (S.D. Tex. July 11, 2016); Meritt Buffalo Events Ctr., L.L.C. v. Cent. Mut. Ins. Co., No. 3:15-CV-3741-D, 2016 WL 931217, at *4 (N.D. Tex. Mar. 11, 2016); Mainali Corp. v. Covington Specialty Ins. Co., No. 3:15-CV-1087-D, 2015 WL 5098047, at *3 (N.D. Tex. Aug. 31, 2015). Because York was the adjuster retained by Lexington to adjust plaintiff's claims, rather than the insurer, such claims against York must fail.

Plaintiff next alleged that York violated section 541.060(a)(1) by "misrepresent[ing] material facts or policy provisions related to coverage." Doc. 19 at 13, ¶ 81. In the context of section 541.060 claims, a misrepresentation is

8

actionable if it is both specific and affirmative. Metro Hosp. Partners, Ltd. v. Lexington Ins. Co., 84 F.Supp.3d 553, 573 (S.D. Tex. 2015). "The misrepresentation must be about the details of a policy, not the facts giving rise to a claim for coverage." Messersmith v. Nationwide Mut. Fire Ins. Co., 10 F.Supp.3d 721, 724 (N.D. Tex. 2014).

Plaintiff does not identify which specific facts give rise to this purported violation, or which policy provision York misrepresented. Instead, plaintiff relies on the previously listed factual allegations, leaving the court and defendants to speculate as to which specific facts might give rise to any liability under 541.060(a)(1). In other words, plaintiff has not alleged such a claim with the specificity required by Rule 9. Because plaintiff failed to clearly identify the requisite "who, what, when, where, and how" of any purported violation related to any of the statements it alleges York, or York through Forman, made, such claim should be dismissed. Dorsey, 540 F.3d at 339.

Moreover, none of the statements alleged by plaintiff, if the court were to guess which of York's statements was intended to support plaintiff's section 541.060(a)(1) claim, involves the details of the policy. Messersmith, 10 F.Supp.3d at 724 (defendant must represent that plaintiff "would receive a particular kind of policy that it did not receive" or "denied

coverage against loss under specific circumstances that it previously had represented would be covered.").

Finally, to the extent that plaintiff seeks from York damages outside regular policy benefits, plaintiff's section 541.060(a)(1) claim fails for the additional reason that "[t]here can be no recovery for extra-contractual damages for mishandling claims unless the complained of actions or omissions caused injury independent of those that would have resulted from a wrongful denial of policy benefits." Parkans Intern. LLC v. Zurich Ins. Co., 299 F.3d 514, 519 (5th Cir. 2002). Plaintiff has not alleged that the proximate cause of its alleged damages was the manner in which York investigated its claim. Mital Hospital, Inc. v. Evanston Ins. Co., No. 4:16-CV-893, 2016 WL 7165976, at *4 (N.D. Tex. Dec. 6, 2016)(citing Provident Am. Ins. Co. v. Castaneda, 988 S.W.2d 189, 198-99 (Tex. 1998)).

Thus, plaintiff has not stated a claim against York for violations of § 541.060 of the Texas Insurance Code.

B.  Deceptive Trade Practices Act Claims

Plaintiff's complaint next alleged claims against York for violations of the DTPA. The DPTA provides recourse to consumers who are victims of "[f]alse, misleading, or deceptive acts or practices in the conduct of any trade or commerce" to recover for such clams. Tex. Bus. & Com. Code § 17.46(a). The elements of a

10

DTPA claim are: "(1) the plaintiff is a consumer; (2) the defendant engaged in false, misleading, or deceptive acts; and (3) these acts constituted a producing cause of the consumer's damages". Hugh Symons Group, plc v. Motorola, Inc., 292 F.3d 466, 468 (5th Cir. 2002). Claims under the DTPA are subject to the heightened pleading requirements of Rule 9(b). Berry v. Indianapolis Life Ins. Co., 608 F. Supp. 2d 785, 800 (N.D. Tex. Mar. 11, 2009).

Plaintiff specifically alleged that plaintiff violated sections 17.46(b)(7) and (b)(12), and section 17.50(a)(4) by:

a. [Representing] that [York's] services were of a particular standard, quality, or grade, when they were of another.

b [Representing] that an agreement confers or involves rights, remedies, or obligations which it does not have or involve.

c. [Employing] an act or practice in violation of the Texas Insurance Code, Chapter 541, as more specifically enumerated in Section VII, above.

Doc. 19 at 13, ¶¶ 87-89. These statements, taken together, demonstrate another instance where plaintiff has failed to point to the specific factual allegations supporting its claims. Plaintiff merely cited the statutory language and left it up to the court's and the defendants' imagination as to what factual allegations support plaintiff's claims. Plaintiff's attempt to cross-reference or incorporate by reference section VII of the

amended complaint fairs no better, as that section of the amended complaint consists solely of conclusory allegations against Lexington. Plaintiff has not identified the "who, what, when, where, and how" of the purported violations. Dorsey, 540 F.3d at 339. Even speculating which facts might apply, the court finds that plaintiff has failed to state any claim against York.

C. Promissory Estoppel Claim

Plaintiff finally urges the court in its amended complaint that "York is estopped from claiming that Plaintiff is not entitled to proceeds that were expended to bring Plaintiff's roof into compliance with City of Fort Worth Building Codes." Doc. 19 at 14, ¶ 93.

"Although promissory estoppel is normally a defensive theory, it is an available cause of action to a promisee who relied to his detriment on an otherwise unenforceable promise." Frost Crushed Stone Co., Inc. v. Odell Greer Constr. Co., 110 S.W.3d 41, 44 (Tex. App.—Waco 2002, no pet.)(citing Wheeler v. White, 398 S.W.2d 93, 96-97 (Tex. 1965)). The requisite elements of a promissory estoppel claim are: (1) a promise, (2) foreseeability of reliance thereon by the promisor, (3) substantial reliance by the promisee to his detriment. MetroplexCore, L.L.C. v. Parsons Transp., Inc., 743 F.3d 964, 977

(5th Cir. 2014); see also English v. Fischer, 660 S.W.2d 521, 524 (Tex. 1983); Frost Crushed Stone Co., Inc., 110 S.W.3d at 44.

To support its promissory estoppel claim, plaintiff alleges that (1) York worked directly with JE Roofing to the exclusion of plaintiff, (2) plaintiff relied on York to adjust the claim properly and to monitor the costs associated with roof replacement, (3) York "promised to prepare and present an 'agreed scope'" for plaintiff's roof repair, (4) York knew or should have known plaintiff would rely on this promise, (5) plaintiff relied to its detriment on York's promise, and (6) such reliance was the producing cause of plaintiff's damages. Doc. 19 at 14, ¶¶ 93-95.

York argues that plaintiff "has not sufficiently alleged a 'definite, unconditional promise' by York," "has [] failed to allege that it substantially relied on any promise by York, much less that its reliance was both reasonable and justified," or that plaintiff materially changed its position in reliance on York's promise. Doc. 21 at 15-16. York further challenges plaintiff's pleadings on the grounds that, among other things, plaintiff is attempting to use promissory estoppel "despite the presence of related contractual agreements." Id. at 16.

A promissory estoppel claim requires a "definite, unconditional promise," Elite Center for Minimal Invasive Surgery, LLC v. Health Care Serv. Corp., 221 F.Supp.3d 853, 863

13

(S.D. Tex. 2016), that is "sufficiently specific and definite so that it would be reasonable and justified for the promisee to rely on it." Davis v. Tex. Farm. Bureau Ins., 470 S.W.3d 97, 108 (Tex. App.-Houston [1st Dist.] 2015, no pet.). And, the promisee's reliance on the promise must be "reasonable and justified." Addicks Servs., Inc. v. GGP-Bridgeland, LP, 596 F.3d 286, 300 (5th Cir. 2010).

Having reviewed plaintiff's pleadings, the court is satisfied that plaintiff has failed to state an affirmative promissory estoppel claim against York. The only promise plaintiff alleges in its amended complaint that York made to it was that York would "prepare and present an 'agreed scope'" for plaintiff's roof repair. Doc. 19 at 14, ¶ 94. Apparently, this "promise" was made when Forman sent an email stating, "When you receive a copy of the engineering report and related invoice from Jeff Eubank Roofing, please forward me a copy for review so we can develop an agreed scope for the additional decking required." Doc. 19 at 4, ¶ 14; supra at 2 n. 2. Such statement is too vague and indefinite to constitute a promise to satisfy plaintiff's pleading requirement on this claim. Elite Center for Minimal Invasive Surgery, LLC, 221 F.Supp.3d at 863. And, the remaining elements of the promissory estoppel claim have been alleged in a conclusory manner, without factual underpinnings to support them.

14

Plaintiff also urges in its response to York's motion that paragraphs 20, 21, 22, at 25 of the amended complaint allege promises York made to plaintiff. Doc. 23 at 9. However, a review of plaintiff's amended complaint does not point to any of these statements as promises supporting its promissory estoppel claim against York. Even if it did, plaintiff has not alleged that it relied on those statements to its detriment, nor that such reliance was foreseeable by defendant.

For these reasons, the court finds that plaintiff has failed to plead a promissory estoppel claim.

V.

Order

Therefore, for the foregoing reasons,

The court ORDERS that the motion of York be, and is hereby, granted, and plaintiff's claims against York be, and are hereby, dismissed.

The court further ORDERS that from this point forward, the style of this case shall read "University Baptist Church of Fort Worth, Plaintiff, v. Lexington Insurance Company, Defendant."

The court determines that there is no just reason for delay in, and hereby directs, entry of final judgment as to the

dismissal of plaintiff's claims against York.

SIGNED May 16, 2018

_____
JOHN McBRYDE
United States District Judge