U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

MAY 23 2018

CLERK, U.S. DISTRICT COURT
By_____
    Deputy

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

UNIVERSITY BAPTIST CHURCH §
FORT WORTH, §
 §
　　　　Plaintiff, §
 §
VS. § NO. 4:17-CV-962-A
 §
LEXINGTON INSURANCE COMPANY §
AND YORK RISK SERVICES GROUP, INC., §
 §
　　　　Defendants. §

AMENDED
MEMORANDUM OPINION
and
ORDER
(This amended memorandum opinion and order
is effective May 16, 2018, and replaces
in its entirety the memorandum opinion and
order signed in this action on May 16, 2018.)

Came on for consideration in the above-captioned action the motion to dismiss filed by defendant York Risk Services Group, Inc. ("York"). The court, having considered the motion, the response of plaintiff, University Baptist Church of Fort Worth, thereto, York's reply, the entire record, including the supplemental authority submitted by plaintiff, and the applicable legal authorities, finds that the motion should be granted.

I.

## Plaintiff's Amended Complaint

The following is an abbreviated form of the allegations against York in plaintiff's live pleading, Plaintiff's Amended Complaint:

York was hired by defendant Lexington Insurance Company ("Lexington") to adjust the alleged loss sustained to plaintiff's property following a hail and wind storm on March 17, 2016. Doc.[1] 19 at 2, ¶¶ 7-8. York, in turn, assigned one of its employees, Kevin Forman ("Forman"), to examine the property and adjust the loss. Id., ¶ 8. On September 14, 2016, Lexington sent documentation to plaintiff indicating that the undisputed loss and agreed scope of costs for replacement of the roof was $586,040.20. Id. at 3, ¶¶ 9 & 11. Also in September, after concerns arose about whether plaintiff's commercial property complied with the necessary code requirements, Forman retained a third party to inspect the roof and address the code upgrade issues. Id., ¶ 13.

Forman notified plaintiff on September 26, 2016, that plaintiff would be receiving a copy of an engineering report from the engineer retained by the third party, and a related invoice

---

[1] The "Doc.___" reference is to the number assigned to the referenced item on the docket in this action, No. 4:17-CV-962-A.

from Jeff Eubank Roofing ("JE Roofing"), and requested that plaintiff forward those items to Forman upon receipt for the purpose of developing with plaintiff an agreed scope for the additional improvements required.² Id., ¶ 14. On November 23, 2016, JE Roofing submitted to Forman a code upgrade bid of $285,798.00 Id., ¶ 16. In December 2016 and January 2017 Forman discussed with JE Roofing the proposed cost of the code upgrade project. Id. at 4, ¶¶ 18-19. The decision was made that "the cost of re-decking the main chapel" would be conducted on a "time and material" basis, "due to the uniqueness of the project." Id., ¶ 19. Forman sent JE Roofing the forms to be used for tracking time and materials with instructions that in order to avoid any concerns or misunderstandings, the forms were to be returned within two days of the applicable activity. Id., ¶ 20.

On February 28, 2017, Forman sent an email to plaintiff that read:

> I have informed the carrier that [the third-party] has verified that the changes being made to the decking of the main church for the installment of new tile is being required and enforced by the city of Fort Worth. Code upgrade costs are indemnified once incurred when they fall under this city of FT. Worth enforcement. Due to the uniqueness of the operation and since it hasn't been done before, this is why we are tracking the costs in this way as agreed with JE Roofing.

---

²The email read, in pertinent part: "When you receive a copy of the engineering report and related invoice . . . , please forward me a copy for review so we can develop an agreed scope for the additional decking required." Id., ¶ 14. (emphasis removed).

3

Id. at 4, ¶ 22. Before York's approval was given for the work to begin, JE Roofing had already begun replacing the roof. Id. at 5, ¶ 24. JE Roofing, which was the roofing contractor, regularly submitted to York the invoices or forms as required by York. Id., ¶ 23.

On April 28, 2017, Plaintiff received an invoice that included seven weeks of "Extras" charges in the amount of $582,944.75. Id., ¶ 25. Plaintiff asked Forman several days later to confirm in writing that the insurance would "provide the funds for the work required by the engineer." Id. On July 11, 2017, plaintiff, through the church's pastor, informed Lexington "that its prior inquiries about the status of the claim had gone unresponded to." Id., ¶ 28. The pastor, in the email he sent to Lexington "recalled a conversation [the pastor] had with Forman in which Forman stated that he was 'alarmed at the skyrocketing costs for the repairs and implied that the church could potentially be responsible.'" Id. The pastor also informed Lexington at this time that it had not received weekly updates regarding progress on the re-decking, that plaintiff "endured increased exposure to the roof and the church itself," and that plaintiff had instructed JE Roofing to cease work on the roof. Id., at 5-6, ¶ 28. JE Roofing charged $864,148.49 in "time and

materials" related to the code upgrade for plaintiff's property. Id., at 6, ¶ 32.

"Defendants failed and refused to pay [p]laintiff an appropriate amount for losses and damages caused to [p]laintiff's property by an occurrence covered under their contract of insurance." Id., ¶ 37. Plaintiff was required to take out a loan to pay for "the extra work" performed by JE Roofing. Id., ¶ 33.

Plaintiff's claims against York are alleged in sections X, XI, and XII of the amended complaint. In section X, plaintiff alleged that York violated section 541.060(a)(2)(A) of the Texas Insurance Code by failing "to attempt in good faith to effectuate a prompt, fair, and equitable settlement of Plaintiff's claims even though Defendant Lexington's liability had become reasonably clear," id. at 12, ¶ 78; that York violated section 541.060(a)(3) by "refus[ing] to pay Plaintiff's claim without conducting a reasonable investigation with respect to the claim," id. at 13, ¶ 80; and, that York violated section 541.060(a)(1) by "misrepresent[ing] material facts or policy provisions related to coverage," id. ¶ 81. In section XI, plaintiff alleged that, as authorized by section 541.151 of the Texas Insurance Code, plaintiff is bringing a private action for violations of the Texas Deceptive Trade Practices Act ("DTPA"), sections 17.41 et

seq. of the Texas Business & Commerce Code. Plaintiff, as a "consumer," as defined by the DTPA, relied on the acts and practices enumerated in section XI to its detriment. York represented that an agreement confers or involves rights, remedies, or obligations which it does not have or involve, that York employed an act or practice in violation of chapter 541 of the Texas Insurance Code, and that its services were of a particular standard, quality, or grade, when they were of another. All of those "acts were a producing cause of Plaintiff's damages for which Plaintiff now sues." Id. at 14, ¶ 90. In section XII, plaintiff made a promissory estoppel claim against York, alleging that York is estopped from claiming that plaintiff is not entitled to proceeds that were expended to bring plaintiff's roof into compliance with the City of Fort Worth Building Codes, and concluding with the following assertion:

> 94. By overseeing the adjustment of the Plaintiffs claim, Defendant York represented that it would adjust the claim fairly and properly. Defendant York also promised to prepare and present an "agreed scope" for the repairs to Plaintiffs roof. Defendant York knew or should have known that Plaintiff would rely on this promise by Defendant York. Plaintiff relied to its detriment on the promises of Defendant York to properly monitor the work of Jeff Eubank Roofing and to provide an agreed scope.
>
> 95. The detrimental reliance by Plaintiff on the promises of Defendant York were a producing cause of damages to Plaintiff for which Plaintiff now sues.

Id., ¶¶ 94-95.

II.

## Grounds of the Motion

York moves to dismiss plaintiff's claims against it on the grounds that (1) plaintiff failed to allege in its amended complaint the necessary "who, what, where, when, and how" of York's purported statutory violations, (2) plaintiff failed to allege that plaintiff suffered any extra-contractual damages as a result of York's actions, and (3) plaintiff's promissory estoppel claim fails as a matter of law.

III.

## Applicable Pleading Standards

A.  Rule 8(a)

Rule 8(a)(2) of the Federal Rules of Civil Procedure provides, in a general way, the applicable standard of pleading. It requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), "in order to give the defendant fair notice of what the claim is and the grounds upon which it rests," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotation marks and ellipsis omitted). Although a complaint need not contain detailed factual allegations, the "showing" contemplated by Rule 8 requires the plaintiff to do more than simply allege legal conclusions or recite the elements of a cause

7

of action. Twombly, 550 U.S. at 555 & n.3. Thus, while a court must accept all of the factual allegations in the complaint as true, it need not credit bare legal conclusions that are unsupported by any factual underpinnings. See Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009) ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.").

Moreover, to survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, the facts pleaded must allow the court to infer that the plaintiff's right to relief is plausible. Iqbal, 556 U.S. at 678. To allege a plausible right to relief, the facts pleaded must suggest liability; allegations that are merely consistent with unlawful conduct are insufficient. Id. In other words, where the facts pleaded do no more than permit the court to infer the possibility of misconduct, the complaint has not shown that the pleader is entitled to relief. Id. at 679. "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

B. Rule 9(b)

Rule 9(b) of the Federal Rules of Civil Procedure sets forth the heightened pleading standard imposed for fraud claims: "In

8

alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." The Fifth Circuit requires a party asserting fraud to "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." Hermann Holdings, Ltd. v. Lucent Techs., Inc., 302 F.3d 552, 564-65 (5th Cir. 2002) (internal quotations and citations omitted). Succinctly stated, Rule 9(b) requires a party to identify in its pleading "the who, what, when, where, and how" of the events constituting the purported fraud. Dorsey v. Portfolio Equities, Inc., 540 F.3d 333, 339 (5th Cir. 2008). Claims alleging violations of the Texas Insurance Code are subject to the requirements of Rule 9(b), Frith v. Guardian Life Ins. Co. of Am., 9 F. Supp. 2d 734, 742 (S.D. Tex. 1998), as are claims alleging violations of the DTPA, id. at 742-43; see also Berry v. Indianapolis Life Ins. Co., 608 F. Supp. 2d 785, 800 (N.D. Tex. Mar. 11, 2009).

IV.

Analysis

Plaintiff has failed to meet the Rule 8(a)(2) pleading standard as defined by the Supreme Court in Twombly and Iqbal as to any of its claims against York. Its allegations as to those claims are mere legal conclusions that are unsupported by factual

underpinnings. As to the alleged statutory violations, plaintiff recites in its pleading only the elements of causes of action, not the factual bases of those elements. There are no facts alleged that would allow the court to infer that plaintiff has a right to relief against York under any of its three alleged causes of action. While plaintiff has a section in its complaint headed "Facts," and recites under that heading things certain persons did or failed to do in relation to plaintiff's roof replacement and its insurance coverage with Lexington, doc. 19 at 2-7, ¶¶ 5-37, when plaintiff states in a conclusory way the precise claims plaintiff is making against York, plaintiff does not provide any enlightenment by way of factual allegations as to which, if any, of the facts set forth under the "Facts" heading are pertinent to, or support, plaintiff's claims against York. Id. at 12-14, ¶¶ 77-95. The reader of the pleading is left to speculate on that subject.

Moreover, to whatever extent plaintiff is making a claim or claims against York based on representations allegedly made by a representative of York, plaintiff fails to comply with the Rule 9(b) requirements, as they have been defined by the Fifth Circuit, that the pleading specify the statements contended to be false, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent. In

10

other words, plaintiff has failed to satisfy the who, what, when, where, and how of the events constituting the alleged misrepresentations or false statements.

As discussed below, there are other reasons why plaintiff's allegations against York fail to state a claim upon which relief may be granted.

A.  <u>Texas Insurance Code Claims (the Section X Claims)</u>

There is no allegation from which the conclusion could be reached that section 541.060(a)(2)(A) has any potential applicability to York. An adjusting firm, such as York is, cannot be held liable under that section because it is neither the insurer nor someone with settlement authority on behalf of the insurer. See <u>Lopez v. United Prop. & Cas. Ins. Co.</u>, 197 F. Supp. 3d 944, 950 (S.D. Tex. July 11, 2016)(noting that "[t]he majority of federal courts that have addressed [section 541.060(a)(2)(A)] have found that [it] applies only to insurers, and that it does not apply to adjusters"); see also <u>McClelland v. Chubb Lloyd's Ins. Co.</u>, No. 5:16-CV-00108, 2016 WL 5791206, at *3 (W.D. Tex. Sept. 30, 2016); <u>Merritt Buffalo Events Ctr., L.L.C. v. Cent. Mut. Ins. Co.</u>, No. 3:15-CV-3741-D, 2016 WL 931217, at *4 (N.D. Tex. Mar. 11, 2016); <u>Mainali Corp. v. Covington Specialty Ins. Co.</u>, No. 3:15-CV-1087-D, 2015 WL 5098047, at *4 (N.D. Tex. Aug. 31, 2015).

The next section of the Texas Insurance Code upon which plaintiff relies is section 541.060(a)(3). The case law makes clear that it cannot form the basis of a claim in a case such as this against an adjusting company, such as York. See Lopez, 197 F. Supp. 3d at 950 ("[A]n adjuster cannot be held liable under § 541.060(a)(3) because an adjuster has no obligation to provide a policyholder a reasonable explanation of the basis in the policy for the insurer's denial of a claim, or offer of a compromise settlement of a claim." (citations and quotation marks omitted)); see also McClelland, 2016 WL 5791206 at *3 (Section 541.060(a)(3) "is similarly inapplicable to adjusters because, just as adjusters do not have the authority to affirm or deny coverage, they have 'no obligation to provide a policyholder a reasonable explanation of the basis in the policy for the insurer's denial of a claim, or offer of a compromise settlement of a claim'"(quoting Mainali Corp., 2015 WL 5098047 at *4)).

Similarly, plaintiff's reliance on section 541.060(a)(7) as basis for a claim against York is equally misplaced. Those who can be held liable under that section "are the insurance company or the individual at the insurance company who refuses to pay the claim, not the individual responsible for conducting the investigation." Messersmith v. Nationwide Mut. Fire Ins. Co., 10 F. Supp. 3d 721, 725 (N.D. Tex. 2014); see also McClelland,

2016 WL 5791206 at *3; Meritt Buffalo Events Ctr., L.L.C., 2016 WL 931217 at *4.

Plaintiff fares no better in its attempt to base a claim against York based on section 541.060(a)(1). For a representation contemplated by that section to be actionable, "[t]he misrepresentation must be about the details of a policy, not the facts giving rise to a claim for coverage." Messersmith, 10 F. Supp. 3d at 724; see also Meritt Buffalo Events Ctr., L.L.C., 2016 WL 931217 at *4. Plaintiff does not identify which specific facts give rise to this purported violation, or which policy provision York might have misrepresented. Instead, plaintiff relies on the previously listed factual allegations, leaving the court and defendants to speculate as to which specific facts might give rise to any liability under 541.060(a)(1). In other words, plaintiff has not alleged such a claim with the specificity required by Rule 9. Because plaintiff failed to clearly identify the requisite "who, what, when, where, and how" of any purported violation related to any of the statements it alleges York, or York through Forman, made, such claim should be dismissed. Dorsey, 540 F.3d at 339.

Moreover, none of the statements alleged by plaintiff, if the court were to guess which of York's statements was intended to support plaintiff's section 541.060(a)(1) claim, involves the

13

details of the policy. Messersmith, 10 F. Supp. 3d at 724 (defendant must represent that plaintiff "would receive a particular kind of policy that it did not receive" or "denied coverage against loss under specific circumstances that it previously had represented would be covered.").

Thus, plaintiff has not stated a claim against York for violation of any part of § 541.060 of the Texas Insurance Code.

B. <u>Deceptive Trade Practices Act Claims (the Section XI Claim)</u>

Plaintiff's complaint next alleged claims against York for violations of the DTPA. The DPTA provides recourse to consumers who are victims of "[f]alse, misleading, or deceptive acts or practices in the conduct of any trade or commerce" to recover for such clams. Tex. Bus. & Com. Code § 17.46(a). The elements of a DTPA claim are: "(1) the plaintiff is a consumer; (2) the defendant engaged in false, misleading, or deceptive acts; and (3) these acts constituted a producing cause of the consumer's damages". Hugh Symons Group, plc v. Motorola, Inc., 292 F.3d 466, 468 (5th Cir. 2002). Claims under the DTPA are subject to the heightened pleading requirements of Rule 9(b). <u>Berry v. Indianapolis Life Ins. Co.</u>, 608 F. Supp. 2d 785, 800 (N.D. Tex. Mar. 11, 2009).

Plaintiff specifically alleged that plaintiff violated sections 17.46(b)(7) and (b)(12), and section 17.50(a)(4) by:

    a.    [Representing] that [York's] services were of a particular standard, quality, or grade, when they were of another.

    b    [Representing] that an agreement confers or involves rights, remedies, or obligations which it does not have or involve.

    c.    [Employing] an act or practice in violation of the Texas Insurance Code, Chapter 541, as more specifically enumerated in Section VII, above.

Doc. 19 at 13, ¶¶ 87-89. These statements, taken together, demonstrate another instance where plaintiff has failed to point to the specific factual allegations supporting its claims. Plaintiff merely cited the statutory language and left it up to the court's and the defendants' imagination as to what factual allegations support plaintiff's claims. Plaintiff's attempt to cross-reference or incorporate by reference section VII of the amended complaint fairs no better, as that section of the amended complaint consists solely of conclusory allegations against Lexington. Plaintiff has not identified the "who, what, when, where, and how" of the purported violations. Dorsey, 540 F.3d at 339. Even speculating which facts might apply, the court finds that plaintiff has failed to state any claim against York.

15

C.   Promissory Estoppel Claim (the Section XII Claim)

Plaintiff finally urges the court in its complaint that "York is estopped from claiming that Plaintiff is not entitled to proceeds that were expended to bring Plaintiff's roof into compliance with City of Fort Worth Building Codes." Doc. 19 at 14, ¶ 93.

"Although promissory estoppel is normally a defensive theory, it is an available cause of action to a promisee who relied to his detriment on an otherwise unenforceable promise." Frost Crushed Stone Co., Inc. v. Odell Greer Constr. Co., 110 S.W.3d 41, 44 (Tex. App.—Waco 2002, no pet.)(citing Wheeler v. White, 398 S.W.2d 93, 96-97 (Tex. 1965)). The requisite elements of a promissory estoppel claim are: (1) a promise, (2) foreseeability of reliance thereon by the promisor, (3) substantial reliance by the promisee to his detriment. MetroplexCore, L.L.C. v. Parsons Transp., Inc., 743 F.3d 964, 977 (5th Cir. 2014); see also English v. Fischer, 660 S.W.2d 521, 524 (Tex. 1983); Frost Crushed Stone Co., Inc., 110 S.W.3d at 44.

To support its promissory estoppel claim, plaintiff alleges that (1) York worked directly with JE Roofing to the exclusion of plaintiff, (2) plaintiff relied on York to adjust the claim properly and to monitor the costs associated with roof replacement, (3) York "promised to prepare and present an 'agreed

scope'" for plaintiff's roof repair, (4) York knew or should have known plaintiff would rely on this promise, (5) plaintiff relied to its detriment on York's promise, and (6) such reliance was the producing cause of plaintiff's damages. Doc. 19 at 14, ¶¶ 93-95.

York argues that plaintiff "has not sufficiently alleged a 'definite, unconditional promise' by York," "has [] failed to allege that it substantially relied on any promise by York, much less that its reliance was both reasonable and justified," or that plaintiff materially changed its position in reliance on York's promise. Doc. 21 at 15-16. York further challenges plaintiff's pleadings on the grounds that, among other things, plaintiff is attempting to use promissory estoppel "despite the presence of related contractual agreements." Id. at 16.

A promissory estoppel claim requires a "definite, unconditional promise," Elite Ctr. for Minimal Invasive Surgery, LLC v. Health Care Serv. Corp., 221 F. Supp. 3d 853, 863 (S.D. Tex. 2016), that is "sufficiently specific and definite so that it would be reasonable and justified for the promisee to rely on it." Davis v. Tex. Farm. Bureau Ins., 470 S.W.3d 97, 108 (Tex. App.-Houston [1st Dist.] 2015, no pet.). And, the promisee's reliance on the promise must be "reasonable and justified." Addicks Servs., Inc. v. GGP-Bridgeland, LP, 596 F.3d 286, 300 (5th Cir. 2010).

17

Having reviewed plaintiff's pleadings, the court is satisfied that plaintiff has failed to state an affirmative promissory estoppel claim against York. The nearest to a promise alleged by plaintiff is that York said it would "prepare and present an 'agreed scope'" for plaintiff's roof repair. Doc. 19 at 14, ¶ 94. Apparently, this "promise" was made when Forman sent an email stating, "[w]hen you receive a copy of the engineering report and related invoice from Jeff Eubank Roofing, please forward me a copy for review so we can develop an agreed scope for the additional decking required." Doc. 19 at 4, ¶ 14; supra at 2 n. 2. Such statement is too vague and indefinite to constitute a promise to satisfy plaintiff's pleading requirement on this claim. Elite Ctr. for Minimal Invasive Surgery, LLC, 221 F. Supp. 3d at 863. And, the remaining elements of the promissory estoppel claim have been alleged in a conclusory manner, without factual underpinnings to support them.

Plaintiff also urges in its response to York's motion that paragraphs 20, 21, 22, at 25 of the amended complaint allege promises York made to plaintiff. Doc. 23 at 9. However, a review of plaintiff's amended complaint does not point to any of these statements as promises supporting its promissory estoppel claim against York. Even if it did, plaintiff has not alleged

that it relied on those statements to its detriment, nor that such reliance was foreseeable by defendant.

For these additional reasons, the court finds that plaintiff has failed to plead a promissory estoppel claim.

V.

Order

Therefore, for the foregoing reasons,

The court ORDERS that the motion of York be, and is hereby, granted, and plaintiff's claims against York be, and are hereby, dismissed.

The court determines that there is no just reason for delay in, and hereby directs, entry of final judgment as to the dismissal of plaintiff's claims against York.

The court further ORDERS that from this point forward, the only defendant in this action is Lexington and the style of this case is "University Baptist Church of Fort Worth, Plaintiff, v. Lexington Insurance Company, Defendant."

SIGNED May 23, 2018, effective May 16, 2018.

_____
JOHN McBRYDE
United States District Judge