IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION



| UNIVERSITY BAPTIST CHURCH | § | |
| OF FORT WORTH, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | NO. 4:17-CV-962-A |
| | § | |
| LEXINGTON INSURANCE COMPANY, | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM OPINION
and
ORDER

Came on for consideration in the above-captioned action the motion for summary judgment filed by defendant, Lexington Insurance Company ("Lexington"). The court, having considered the motion, the response of plaintiff, University Baptist Church of Fort Worth ("Church"), Lexington's reply, the entire record, and the applicable legal authorities, finds that the motion should be granted.

I.

Background

The operative pleading is Plaintiff's Amended Complaint ("Complaint") filed February 8, 2018. Doc. 19.[1] Church's claims arise out of a dispute between Church and Lexington related to hail and windstorm damage to Church's church buildings. When the

---

[1] The "Doc.__" references are to the number assigned to the referenced items on the docket in this Case No. 4:17-CV-962-A.

Complaint was filed, there was a second defendant, York Risk Services Group, Inc. ("York"), the independent adjusting firm that worked with Church and its roofing contractor in defining the needed repairs. York filed a motion to dismiss for failure to state a claim upon which relief may be granted. Its motion was granted, and a final judgment dismissing Church's claims against York was issued May 16, 2018. See Docs. 31 & 32. The factual recitations contained in the Complaint, doc. 19 at 2-7, ¶¶ 5-37, are summarized in an abbreviated form under the heading "Plaintiff's Amended Complaint" on pages 2-6 of the Amended Memorandum Opinion and Order explaining the court's reasons for dismissing Church's claims against York, doc. 32 at 2-6. For convenience, the court adopts, and here incorporates by reference, that summarization inasmuch as the allegations were the factual bases of Church's claims against Lexington as well as those against York.

As that summarization makes apparent, Lexington was the insurance company that issued the insurance policy that provided insurance coverage for the hail and windstorm damage Church's church buildings suffered on March 17, 2016. Church's claims against Lexington are not, except in a minor respect, based on any contention that Lexington did not satisfy the obligations imposed on it by the insurance policy it issued to Church, but,

instead, with that one exception, are exclusively extra-contractual claims.

The only exception is the allegation in paragraph 35, on pages 6-7 of the Complaint, that Lexington was responsible for use of Verea[2] tile in the re-roofing of Church's church buildings instead of the Ludowici tile that was on the buildings when the roof was damaged. Doc. 19 at 6-7, ¶ 35. Church alleged that Verea is of lesser quality than Ludowici, and is not as durable as Ludowici, and that by causing the Verea tile to be used, Lexington breached the provision of the policy that required it to pay "the cost to repair, replace and rebuild the property with material of like kind and quality." Id.

Church has rather lengthy allegations in the Complaint under the heading "Breach of Contract-Lexington," but the summary judgment record, including the briefs filed by the parties, make clear that those allegations actually are related to Church's extra-contractual claims and do not describe a claim of breach of contract by Lexington.

The summary judgment record discloses that the events that led to Church's extra-contractual claims were set in motion by the making of a gross underestimate by Jeff Eubank Roofing Co.,

---

[2]In some of the summary judgment paperwork, the alternative tile is sometimes referred to as "Verea" and sometimes as "Versa." The court uses in this memorandum opinion whichever name was used in the particular document the court is discussing or from which it quotes.

Inc. ("Eubank"), the roofing contractor selected and hired by Church, of the cost of labor and material that would be required to do the extra work during the roof repair needed to satisfy law and ordinance requirements.[3] This is a subject to which the court will return. The policy had a limit of $250,000 for work of that kind. Doc. 45 at App. 013, 015. Were it not for the Ordinance or Law Amendatory Endorsement in the insurance policy, the insurance policy would not have provided any benefits to Church for increased costs attributable to enforcement of any ordinance or law regulating the construction, use or repair of the property. Id. at App. 052, § 4.b.

The parties are in agreement, and the record establishes, id. at App. 288, that Lexington paid Church the policy limit of $250,000 for the code upgrade work, and that, except for the Verea vs. Ludowici issue, Lexington complied with all of its policy obligations. Lexington paid Church a total of $852,149.52 for repair of church buildings in satisfaction of its insurance policy payment obligations as to those buildings. Id. at App. 006, ¶ 11.

---

[3]"Code upgrade" and "law and ordinance" are used interchangeably by the parties in this litigation, and the court will do the same. Law and ordinance is the term used for code compliance work in Lexington's Commercial Line Policy, doc. 45 at App. 036-37, while code upgrade is the term used to refer to the same thing in most of the communications between the parties that do not reference the specific language of the policy.

4

Church is using the events that followed Eubank's underestimate of the cost of doing the code upgrade work as predicates for its extra-contractual claims. By doing so, Church attempts to shift the significant extra cost resulting from that underestimate from the Church and/or Eubank to Lexington.

II.

## Lexington's Summary Judgment Motion

Lexington seeks summary judgment as to Church's breach of contract claims for the reasons that there is no evidence in the summary judgment record that it breached any obligation it had under the policy contract, and the summary judgment record establishes as a matter of law that it performed its policy contractual obligations.

Summary judgment is sought by Lexington as to Church's extra-contractual claims (claims under chapters 541 and 542 of the Texas Insurance Code, for alleged breach of the duty of good faith and fair dealing, and alleged violations of the Texas Deceptive Trade Practices-Consumer Protection Act ("DTPA")) for the reason that there is no summary judgment evidence that would support a finding of the existence of all of the essential elements of any of those theories of recovery.

III.

Analysis

A. <u>Pertinent Summary Judgment Principles</u>

Rule 56(a) of the Federal Rules of Civil Procedure provides that the court shall grant summary judgment on a claim or defense if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247 (1986). The movant bears the initial burden of pointing out to the court that there is no genuine dispute as to any material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323, 325 (1986). The movant can discharge this burden by pointing out the absence of evidence supporting one or more essential elements of the nonmoving party's claim, "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." <u>Id.</u> at 323.

Once the movant has carried its burden under Rule 56(a), the nonmoving party must identify evidence in the record that creates a genuine dispute as to each of the challenged elements of its case. <u>Id.</u> at 324; <u>see also</u> Fed. R. Civ. P. 56(c) ("A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . ."). If the evidence identified could not lead

6

a rational trier of fact to find in favor of the nonmoving party as to each essential element of the nonmoving party's case, there is no genuine dispute for trial and summary judgment is appropriate. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 597 (1986). In Mississippi Prot. & Advocacy Sys. v. Cotten, the Fifth Circuit explained:

> Where the record, including affidavits, interrogatories, admissions, and depositions could not, as a whole, lead a rational trier of fact to find for the nonmoving party, there is no issue for trial.

929 F.2d 1054, 1058 (5th Cir. 1991).

The standard for granting a motion for summary judgment is the same as the standard for rendering judgment as a matter of law.[4] Celotex Corp., 477 U.S. at 323. If the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. Matsushita, 475 U.S. at 597; see also Mississippi Prot. & Advocacy Sys., 929 F.2d at 1058.

---

[4]In Boeing Co. v. Shipman, 411 F.2d 365, 374-75 (5th Cir. 1969) (en banc), the Fifth Circuit explained the standard to be applied in determining whether the court should enter judgment on motions for directed verdict or for judgment notwithstanding the verdict by saying:
> If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting of the motions is proper. On the other hand, if there is substantial evidence opposed to the motions, that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motions should be denied, and the case submitted to the jury. A mere scintilla of evidence is insufficient to present a question for the jury.

B.   The Breach of Contract Claim

Church bases its breach of contract claim on statements made by Allen Seymour ("Seymour"), an account manager for Eubank, in his affidavit as follows:

> 5.   [Eubank] was hired as the roofing contractor for University Baptist Church ("UBC") for storm damages to their property at 2720 Wabash, Fort Worth, Texas (the "Property").
>
> 6.   Our original proposal was to complete the Project for the price of $651,891.40. See Exhibit A-1 attached hereto. However, the adjuster for York Risk Services Group, Kevin Forman ("Forman"), would not approve the tile that was of like kind and quality to the original tile. The like kind and quality roof tile was a Ludowici product which was included in our original estimate. Therefore, I had to use an inferior tile product (Verea tile) to bring the project in line with the price Forman would approve even though the product of was inferior quality.

Doc. 54 at App. 0004-5, ¶¶ 5-6. But, Seymour did not tell the entire story. If the roof damage had been repaired with Ludowici tiles, as Seymour suggested, the work would have gone as expert Brett A. Lockridge ("Lockridge") described in his unchallenged declaration as follows:

> 13.   The like, kind and quality repair to the roof of the church following the storm [would be] to remove and relay tiles on the damaged portion of the roof, and any quantity deficiency could be made up from matching tile from salvage yards or by replacing a smaller roof facet with completely new, but matching clay roof tiles.

Doc. 45 at App. 128, ¶ 13. Considering that the roof repair work, as actually done, consisted of the replacement of all tiles

8

with entirely new clay tiles of the Versa brand, Lockridge added in his declaration that:

> 14. The church received better than a like, kind and quality repair to its roof when it received a replacement roof with new Versa brand clay tile.

Id., ¶ 14. Lockridge's explanation undoubtedly is why Church has provided no evidence of any damage suffered by it by reason of use of the new Versa tiles instead of the used Ludowici tiles. The absence of evidence of damages is, standing alone, fatal to Church's breach of contract claim, bearing in mind that proof of damages is an essential element of such a claim. Intercontinental Grp. P'ship v. KB Home Lone Star L.P., 295 S.W.3d 650, 655 & n.26 (Tex. 2009).

In addition, the breach of contract claim is also shown to be without merit by the summary judgment evidence that Eubank chose to give its estimate/bid with the Verea tile replacement feature rather than the Ludowici tile repair feature in order to successfully compete with estimates/bids by competing roofers. Doc. 45 at App. 126, ¶¶ 7 & 8. Thus, Lexington can hardly be held accountable for the decision to use Verea tile. By accepting the work contemplated by Eubank's Verea bid, Church itself made the choice to use Verea rather than Ludowici. Doc. 45 at App. 277-78.

Therefore, for more than one reason, summary judgment should be granted on Church's sole breach of contract claim.

C. The Extra-Contractual Claims

The bases for all of Church's extra-contractual claims against Lexington are the events related to Eubank's inadequate $285,000 proposal to do the code upgrade work, and the conduct of York, acting through its employee Forman, related to that proposal. Therefore, the court is commencing the discussion relative to those claims by discussing the summary judgment bearing on those events.

On November 22, 2016, Eubank addressed to Church its "Proposal" related to the code upgrade work. Doc. 54 at App. 0031. The Proposal starts with the statement "[p]er your request we respectfully submit the following scopes of work . . . ," following which is a listing of eight types of work to be done to "Retrofit Deck System," which is followed by the statement "[w]e will complete the above scope of work for the sum of $285,798.00." Id.

The Proposal was signed by Seymour, the account manager for Eubank, who played a role in preparation of the Proposal. His role was such, Seymour later told Forman, that if it turned out that Eubank had been required to do the code upgrade work for the $285,798.00 figure used in the Proposal, Seymour would have lost

10

his job. <u>Id.</u> at App. 0061 (dep. p. 105). With respect to that conversation, Forman testified as follows:

> Allen [Seymour] said, "It's a good thing that we didn't go with the original proposal because I would've lost my job." And then I asked them to clarify what else was going on. And he said, "Well, these costs are being monitored." This is what we're running into. It's requiring a tremendous amount of labor. There's some additional issues that have raised their head as far as things that we're having to address on this roof that we weren't expecting to have to address.

<u>Id.</u>

Eubank continued to do the code upgrade work at a total cost to Church of $864,148.49, which exceeded the $285,798.00 proposal by $578,350.49. Doc. 54 at App. 0037, ¶ 19. Church's attempt to cause Lexington to pay that difference is based on the conduct of Forman. When he learned of the $285,000 proposal of Eubank to do the code upgrade work, he was concerned that the proposal was not necessarily accurate. <u>Id.</u> at App. 0064 (dep. p. 129). He was not comfortable with how the proposal was being calculated. <u>Id.</u> His recommendation to cause the work to be done on a time and materials basis was to try to determine an accurate cost for the work. <u>Id.</u> at App. 0065 (dep. p. 131). They knew that there might be some things that they would run into that nobody anticipated. <u>Id.</u> Church was aware that there was an agreement to proceed on a time and materials basis. <u>Id.</u> (dep. p. 132).

11

The summary judgment record shows that the code upgrade work was completed by Eubank. Doc. 45 at App. 275. There is no indication in the record that Church was required to pay more than the work was worth to Church, nor is there any indication in the summary judgment record that Church would not have caused the work to have been done even if it had known from the outset that the cost of the work would end up being what it actually was. Nor is there any indication in the summary judgment record that any conduct of York or Forman caused the cost to be greater than it should have been, and actually was, for performance of the code upgrade work.

Turning now to Church's extra-contractual claims. None of them survives Lexington's motion for summary judgment.

1. Church's Duty of Good Faith and Fair Dealing Claim

Although the heading on page 8 of Church's responsive brief suggests that Church is to make an argument in support of its common law duty of good faith and fair dealing claim, doc. 53 at 8, the court is unable to find anything in the brief that can be identified as argument or authority in support of such a claim unless it is found in the general statements in paragraph 44 on page 9 pertaining to Eubank's inadequate $285,000 proposal for doing that work and the decision that was made to do the work on a time and materials basis, id. at 9, ¶ 44.

12

There simply is no basis in the summary judgment record for an argument in support of a claim for violation of a duty of good faith and fair dealing. While Texas law imposes such a duty on an insurer, "there is no duty beyond the contract itself." Higginbotham v. State Farm Mut. Auto. Ins. Co., 103 F.3d 456, 460 (5th Cir. 1997).[5] Put another way, absent a breach of the policy contract, there is no violation of the insurer's duty to act in good faith and deal fairly with the insured.

The summary judgment record establishes without dispute that there was no violation of the insurance policy issued by Lexington related to the code upgrade work. The policy contract said that Lexington would pay up to $250,000 for that work, and there is no contention by Church that it did not receive that payment.

Moreover, the summary judgment record does not contain any evidence that Church suffered any damages related to the conduct of Forman pertaining to the cost of the code upgrade work. Without regard to Forman's conduct, Church was required to have that work done, and there is no suggestion in the summary judgment record that Church paid Eubank more than it should have

---

[5] In Higginbotham, the Fifth Circuit also noted that "Texas law does not recognize a cause of action for negligent claims handling." Higginbotham v. State Farm Mut. Auto. Ins. Co., 103 F.3d 456, 460 (5th Cir. 1997).

13

paid for having the work done. The fact that Church did not buy enough insurance to cover the total cost of the work is not a reason for causing Lexington at this time to bear more than its $250,000 policy limit for that work.

2. <u>Texas Insurance Code Claims</u>

Church alleged in the Complaint that Lexington violated three parts of section 541.060 of the Texas Insurance Code. Doc. 19 at 10, ¶¶ 53-56.[6] The first provision is section 541.060(a)(2), which Church asserts Lexington violated by failing to attempt in good faith to effectuate a prompt, fair and equitable settlement when Lexington's liability was clear. The second is section 541.060(a)(3), which, according to Church, was violated when Lexington failed to promptly provide Church with a reasonable explanation of the basis in the policy, for Lexington's denial of its claim. And the third is section 541.060(a)(7), which Church alleges was violated when Lexington refused to pay Church's claim without conducting a reasonable

---

[6]Church's response to Lexington's motion for summary judgment asserts a new alleged violation of the Texas Insurance Code under section 541.060(a)(1), doc. 53 at 11, but this alleged violation was not asserted in the Complaint. Therefore, the court will not consider Church's arguments as to that provision. However, the court will note that, under Texas law, "post loss statements regarding coverage are not misrepresentations under the Insurance Code," and thus this claim would likely fail even if it had been properly raised by Church. Aguilar v. State Farm Lloyds, 4:15-CV-565-A, 2015 WL 5714654, at *3 (N.D. Tex. Sept. 28, 2015)(citing Texas Mut. Ins. Co. v. Ruttiger, 381 S.W.3d 430, 445-56 (Tex. 2012)); One Way Invs., Inc. v. Century Sur. Co., No. 3:14-CV-2839-D, 2014 WL 6991277, *4-5 (N.D. Tex. Dec. 11, 2014).

14

investigation. All three of Church's claims under the Texas Insurance Code fail as a matter of law.

In order for the court to find that a section 541.060(a)(2) violation took place, there must be (1) clear liability on the part of Lexington, and (2) failure by Lexington to offer a prompt, fair, and equitable settlement. Church has adduced no summary judgment evidence to support either of the elements required to show such a violation. It asks the court to make inferences not supported by the record. Church's insurance policy required Lexington to pay Church after costs had been incurred by Church, and Lexington did just that. There were no need for a settlement because the Lexington timely paid Church the full amount it was entitled to under the policy--$250,000.

Lexington did not violate section 541.060(a)(3) either. That section requires that an insurer provide a policyholder a reasonable explanation of the basis in the policy for the insurer's denial of a claim. Here, Church and its insurance agent knew of the policy sublimit for code upgrade work. Doc. 45 at App. 273-74; App. 331-34. Thus, Lexington was not required to inform Church of its policy limit as an explanation for why it was not paying more than $250,000 for the code upgrade work. Moreover, the policy itself disclosed that limit. See Morris

15

County Nat. Bank v. John Deere Ins. Co., 254 F.3d 538, 541 (5th Cir. 2001) (An insured party is deemed to know the contents of its insurance policy.). Further, as has already been pointed out, there was no denial of claim, as Lexington paid out the full amount owed to Church under its policy.

Finally, Church's claim under section 541.060(a)(7) fails for substantially the same reasons articulated above. A claim under that section requires (1) that the insurer refuse to pay a claim and (2) that it do so without conducting a reasonable investigation. Lexington paid the claim, and did so after a thorough investigation by York.

Finally, Church has not produced any evidence that it suffered actual damages as a result of any alleged Insurance Code violation. There can be no recovery for extra-contractual damages for mishandling claims unless the insured establishes that it suffered damages by reason of the mishandling. See USAA Texas Lloyds Co. v. Menchaca, 545 S.W.3d 479, 500 (Tex. 2018). In other words, the manner in which the claim was investigated or handled must be the cause of damages to the insured. See Provident Am. Ins. Co. v. Castaneda, 988 S.W.2d 189, 198-99 (Tex. 1998). Moreover, there is no basis in the summary judgment record for a finding that Lexington withheld any benefits to

which Church was entitled under the insurance policy, thus eliminating any possible area of recovery by Church from Lexington under any extra-contractual liability.

For the above-stated reasons, all of Church's claims under the Texas Insurance Code fail as a matter of law.

3. <u>Deceptive Trade Practices Act Claims</u>

The DPTA provides recourse to consumers who are victims of "[f]alse, misleading, or deceptive acts or practices in the conduct of any trade or commerce" to recover for such clams. Tex. Bus. & Com. Code § 17.46(a). The elements of a DTPA claim are: "(1) the plaintiff is a consumer; (2) the defendant engaged in false, misleading, or deceptive acts; and (3) these acts constituted a producing cause of the consumer's damages". <u>Hugh Symons Group, plc v. Motorola, Inc.</u>, 292 F.3d 466, 468 (5th Cir. 2002). Claims under the DTPA are subject to the heightened pleading requirements of Rule 9(b). <u>Berry v. Indianapolis Life Ins. Co.</u>, 608 F. Supp. 2d 785, 800 (N.D. Tex. Mar. 11, 2009).

Church specifically alleged that Lexington violated §§ 17.46(b)(7), 17.46(b)(12), and § 17.50(a)(4) by:

a. Representing that York's services were of a particular standard, quality, or grade, when they were of another.

b Representing that an agreement confers or involves rights, remedies, or obligations which it does not have or involve.

> c. Employing an act or practice in violation of the Texas Insurance Code, Chapter 541, as more specifically enumerated in Section VII of Plaintiff's Amended Complaint.

Doc. 19 at 12, ¶¶ 71-73. The court earlier dismissed Church's DTPA claims against York because Church failed to point to the specific factual allegations supporting its claims, and stated that the statements made by Foreman were not misrepresentations under the Texas Insurance Code. Doc. 17 at 14-15. Despite having two opportunities to point to the specific factual allegations supporting its DTPA claims under §17.46(7) in its amended complaint and response to summary judgment, Church still fails to do so. Church has not identified the "who, what, when, where and how" of Lexington's purported violation under §17.46(7). Dorsey v. Portfolio Equities, Inc., 540 F.3d 333, 339 (5th Cir. 2008). Because of this, the court finds that Church's §17.46(b)(7) DTPA claim fails to state a claim against Lexington.

Church's latter two DTPA claims arguably also fail the Dorsey test, but because Church at least addressed them in its response to Lexington's motion for summary judgment, the court will consider them on their merits. Church alleges that Lexington or its agents represented to Church that its insurance policy confers or involves rights, remedies, or obligations which it does not have or involve, in violation of §17.46(b)(12) of the

18

DTPA. The record does not reflect that Lexington did so, and Church has not identified misrepresentations upon which its claim for relief can be granted. Even if this court does Church's work for it and tries to identify the statements that Church believes provide a basis for its DTPA claim under §17.46(b)(12), none rise to the level of a DTPA violation. As made clear by testimony from both Foreman and Kathy Raines, Foreman was clear at all times with Church that he did not make coverage decisions. Doc. 45 at 297, 336-337. His emails, though unclear at times, do not contradict this position.[7]

Finally, as the court has found that Lexington did not violate the Texas Insurance Code, its §17.50(a)(4) claim necessarily fails.

4. Benefits-Lost and Independent-Injury Rules

For the reasons already discussed, neither the Benefits-Lost Rule nor the Independent-Injury Rule of USAA Texas Lloyds Co., 545 S.W.3d at 497, 499, applies to the claims made by Church in this action. The summary judgment record establishes

---

[7]Also worth noting is that the single case cited by Church in support of its position, Royal Globe Ins. Co. v. Bar Consultants, Inc., 577 S.W.2d 688, 694 (Tex. 1979), is a case decided under the former DTPA statute, where a plaintiff had to only prove that she was "adversely affected" by the misrepresentation, and not that the misrepresentation was a "producing cause" of her damages. Given the policy's unambiguous sublimit for Ordinance and Law work, it is at least unclear that a misrepresentation by Foreman would be a producing cause of Church's damages. Regardless, the court need not rule on this issue since it has found that Foreman and Lexington made no representations that rise to the level of a §17.46(b)(12) DTPA violation.

conclusively that Lexington satisfied all its policy payment obligations to Church; and, there is no summary judgment evidence that any conduct of the independent adjuster, York, caused any injury to Church by reason of any conduct about which Church has complained.

V.

Order

The court ORDERS that the motion of Lexington be, and is hereby, granted, and that Church's claims be, and are hereby, dismissed.

SIGNED October 11, 2018.

JOHN McBRYDE
United States District Judge